UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HILLTOP SECURITIES INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0432-B |
| | § | |
| CLEAR HAVEN CAPITAL | § | |
| MANAGEMENT, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Clear Haven Capital Management, LLC ("Clear Haven")'s Motion to Dismiss or, in the alternative, to Transfer Venue (Doc. 12). Clear Haven argues that this case should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Alternatively, Clear Haven seeks to transfer the case to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a). For the following reasons, the Court **DENIES in part** and **GRANTS in part** the Motion. The Court also **ORDERS** that this cause be transferred to the United States District Court for the Southern District of New York.

I.

BACKGROUND

Clear Haven is an investment advisory firm located in New York City. Doc. 1, Compl., ¶ 2. It is registered as a limited liability company under New York law. *Id.* Hilltop Securities Inc. ("Hilltop") is a clearing firm with its principal place of business in Texas. *Id.* ¶ 1. It is incorporated under Delaware law. *Id.* This case arises out of Clear Haven's purchase of securities in 2023.

On January 6, 2023, Clear Haven entered into an agreement to purchase asset-backed securities from Odeon Capital Group LLC ("Odeon"), a broker-dealer based in New York. *Id.* ¶ 9. The securities that Clear Haven agreed to purchase from Odeon are called BSABS 2006-IM1 A7 (the "Securities"). *Id.* That same day, Clear Haven approached Hilltop to help execute the Odeon-to-Clear Haven sale, as it had done for previous trades. *Id.* ¶ 10; Doc. 13-1, Aff. of Alexander Bashan, ¶ 9–10. Clear Haven employee, Alexander Bashan, "contacted Matthew Fournier, the Hilltop employee who managed Hilltop's relationship with Clear Haven, in order to execute the [t]rade." Doc. 13-1, Aff. of Alexander Bashan, ¶ 9. Fournier worked for Hilltop in New York. *Id.* ¶ 10.

Hilltop allegedly agreed to facilitate the sale of the Securities from Odeon to Clear Haven (the "Agreement"). Doc. 1, Compl., ¶ 10. Under this alleged Agreement, Hilltop was to act as a middleman between Odeon and Clear Haven: "Odeon sold the Securities to Hilltop, then Hilltop sold the Securities to Clear Haven." *Id.* According to the Complaint, Hilltop did not play any role in Clear Haven's decision to purchase the Securities. *Id.* Rather, Hilltop was a "riskless principal" that "simply acted as the go-between for the buyer and seller of the Securities." *Id.* ¶¶ 7, 10.

Thereafter, Hilltop allegedly purchased the Securities from Odeon for a total price of $2,844,204.49 on January 6. *Id.* ¶ 9. Hilltop alleges that it executed this trade in Dallas, Texas. *Id.* ¶ 6. Before Hilltop could resell the Securities to Clear Haven, however, the value of the Securities dropped to zero. *Id.* ¶ 12. Despite the drop in the value of the Securities, Hilltop allegedly sold the Securities to Clear Haven for $2,843,253.62 on January 10. *Id.* ¶¶ 12, 15. It appears that this trade was also executed by Hilltop in Dallas, Texas. *Id.* ¶ 6.

Because Clear Haven paid over $2 million for the Securities that had become worthless, Clear Haven allegedly requested that JPMorgan, "the custodian of the accounts to which [Clear

Haven] allocated the Securities," issue a special payment order ("SPO") to Hilltop. *Id.* ¶ 14. SPOs are used "to collect a mark-to-market payment based on the difference between the current and previous market value of an open securities contract." Doc. 12, Mot. Dismiss, 5 (internal quotations omitted). The SPO called for Hilltop to pay JPMorgan approximately the price that Clear Haven paid Hilltop for the Securities: $2,843,253.62. Doc. 1, Compl., ¶ 15. Hilltop complied with the SPO and paid JPMorgan the price it requested. *Id.* Both Fournier and Bashan were involved in the SPO process. Doc. 13-1, Aff. of Alexander Bashan, ¶ 14.

After Hilltop paid the SPO, it requested that Clear Haven compensate it for the $2,843,253.62 that Hilltop paid to JPMorgan pursuant to the SPO. Doc. 1, Compl., ¶ 16. Clear Haven refused, and this litigation followed. *Id.*

Hilltop filed its Complaint against Clear Haven in this Court on February 24, 2023. *See* Doc. 1, Compl. Hilltop brought this diversity action for breach of contract, money had and received, unjust enrichment, and attorneys' fees and costs. *Id.* ¶¶ 17–25. On May 1, 2023, Clear Haven filed the present Motion. Doc. 12, Mot. Dismiss. Clear Haven argues for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *Id.* at 10–12. Alternatively, Clear Haven seeks to transfer the case to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a), arguing that the Southern District of New York is a more convenient venue. *Id.* at 12–14. Finally, Clear Haven argues that the case should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* at 14–18. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. In resolving a Rule 12(b)(2) motion, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The plaintiff "bears the burden of proving that jurisdiction [over the moving defendant] exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When no evidentiary hearing occurs, a plaintiff is not required to "establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." *Id.*; *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013). Moreover, any factual conflict contained in the parties' submissions must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

In a diversity case, "the exercise of personal jurisdiction over a nonresident defendant must comport with both federal due-process requirements and the long-arm statute of Texas." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). Texas's long-arm statute, however, authorizes the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause. *Id.* As such, "the two-step inquiry collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

The personal jurisdiction analysis under the Due Process Clause is broken down into two parts. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" such that it should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985). Second, the exercise of jurisdiction over the defendant must "not offend traditional notions

of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

The defendant's contacts with the forum may "give rise to either specific or general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). General jurisdiction permits a court to hear all claims against a defendant when the defendant's affiliations with the forum state are so "continuous and systematic" as to render it essentially at home in that state. *Sangha*, 882 F.3d at 101 (internal quotations omitted); *see also Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337–38 (5th Cir. 2020) (explaining that a limited liability company is at home in the place where it is organized and where its principal place of business is located); *Bibbs v. Molson Coors Beverage Co. USA, LLC*, 616 F. Supp. 3d 606, 612 (N.D. Tex. 2022) (Pittman, J.). By contrast, specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Although Rule 12(b)(2) authorizes dismissal when a court concludes it lacks personal jurisdiction, such action is not required. Instead, if personal jurisdiction lacking, a court has two options: it may either dismiss the action, or if it be in the interest of justice, it may transfer the action to another judicial district. *See Herman*, 730 F.3d at 466 (5th Cir. 2013) ("Where a court finds it lacks personal jurisdiction, it may dismiss the action[,] . . . [or] [the] court is authorized under 28 U.S.C. § 1406(a) to transfer the action."); *see also* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed.").

### III.

### ANALYSIS

The Court concludes that it lacks personal jurisdiction over Clear Haven. Hilltop failed to make a *prima facie* showing that Clear Haven purposefully availed itself of Texas through sufficient minimum contacts to sustain this Court's exercise of personal jurisdiction over each of Hilltop's causes of action. However, the Court will not dismiss the case under Rule 12(b)(2). Instead, because the Court concludes that it is in the interest of justice, the Court will transfer the case to the United States District Court for the Southern District of New York.[1]

A.  *The Court Lacks Personal Jurisdiction Over Clear Haven*

Hilltop does not claim (and the record would not support the claim) that Clear Haven is subject to general jurisdiction in Texas. *See* Doc. 1, Compl., ¶ 5; *Frank*, 947 F.3d at 337–38. Thus, the issue hinges on whether the Court may properly exercise specific jurisdiction over Clear Haven.

The central dispute in this case is whether Clear Haven breached a contract[2] with Hilltop. In conducting the minimum contacts analysis in such cases, "[t]he ultimate question is whether the allegedly breached contract had a *substantial* relationship to the forum state, considering the totality of the circumstances." *Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-CV-1846-B, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022) (Boyle, J.) (emphasis in original). To determine whether a contract has a substantial relationship to the forum state, the Court considers "only those acts which relate to the formation of the contract and the subsequent breach." *Trois*, 882 F.3d at 489 (5th Cir. 2018) (internal quotations omitted). Specifically, the Court looks to "prior

---

[1] Because the Court transfers this case, it will not address the merits Clear Haven's 12(b)(6) argument. *See Siragusa v. Arnold*, No. 3:12-CV-04497, 2013 WL 5462286, at *1 (N.D. Tex. Sept. 16, 2013) (Lynn, J.) ("[I]f transfer is proper, the transferee forum should decide a motion to dismiss.").

[2] The Court assumes a contract exists solely for purposes of resolving the personal jurisdiction issue.

negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[3] *Id.* (quoting *Burger King Corp.*, 471 U.S. at 479). However, merely contracting with a resident of the forum state, by itself, is insufficient to sustain a finding of minimum contacts. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007); *see also Burger King Corp.*, 471 U.S. at 475 (1985) ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." (internal quotations omitted)).

While the inquiry is necessarily fact intensive, it is well settled that a plaintiff's unilateral activities in the forum state will not support a finding of personal jurisdiction "where the defendant [does] not perform any of its obligations in [the forum state], the contract [does] not require performance in [the forum state], and the contract is centered outside of [the forum state]." *Moncrief Oil Int'l*, 481 F.3d at 312. For example, in *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, the Fifth Circuit held there was no personal jurisdiction in Texas in a breach of contract suit between two law firms where the plaintiff was the only connection to the forum state and the contract "was centered outside of Texas." 24 F.4th 491, 502 (5th Cir. 2022). The contract at issue there required the defendant, an Ohio law firm, to split attorneys' fees with the plaintiff, a Texas law firm. *Id.* at 494–95. The Fifth Circuit reasoned that personal jurisdiction was lacking because

---

[3] The Court elsewhere has outlined other relevant factors in breach of contract cases, including: (1) which party solicited the contract; (2) the extent of negotiations; (3) the location of the communications; (4) the length of the contract performance contemplated; (5) the presence of a choice-of-forum clause or similar provision; (6) the place of performance; (7) the amount of control over performance in the forum state; and (8) whether the defendant contracted with the plaintiff because of the plaintiff's location within the forum state. *Ecigrusa*, 2022 WL 1321573, at *4.

the Ohio firm "did not perform in Texas and was not required to perform in Texas," and because the "alleged contract to split the fees [stemmed] from a non-Texas law firm's legal representation of a non-Texas client in a non-Texas case." *Id.* at 502. Nor was the plaintiff law firm's Texas location a strategic advantage to the Ohio law firm. *Id.* As such, the contract was "centered outside of Texas," and the district court in Texas lacked personal jurisdiction over the defendant law firm. *Id.* (citing *Moncrief Oil Int'l*, 481 F.3d at 312).

This case resembles *Dazinger & De Llano* in that the Agreement here also "is centered outside of Texas." 24 F.4th at 502. The purpose of the alleged Agreement was to facilitate a single sale of securities from Odeon, a New York broker-dealer, to Clear Haven, a New York investment advisory firm. Doc. 1, Compl. ¶ 10; *see Danziger & De Llano,* 24 F.4th at 502. Clear Haven solicited the Agreement from Hilltop through Hilltop's employee, Matthew Fournier, in New York. Doc. 13-1, Aff. of Alexander Bashan, ¶ 9. The Agreement appears to have been negotiated and executed in New York when Hilltop (through Fournier) allegedly agreed to act as a middleman in the Odeon-to-Clear Haven sale. *Id.*; Doc. 1, Compl., ¶ 10; *see Mullinix v. Thirty-Eight St., Inc.*, No. 1:19-CV-067-LY, 2019 WL 11593057, at *1 (W.D. Tex. Dec. 6, 2019) (insufficient contacts to sustain personal jurisdiction in Texas where "agreement at issue was negotiated and executed outside of Texas."). Even the damages that Hilltop seeks—the price of the SPO—stem from actions that occurred in New York, given that the Clear Haven and Hilltop employees involved in the SPO process were based out of New York. Doc. 13-1, Aff. of Alexander Bashan, ¶ 14.

Hilltop's only factual allegations supporting the Court's personal jurisdiction is that the dispute arises "from Clear Haven's relationship and agreement with Hilltop, a Texas-based company." Doc. 1, Compl., ¶ 5. However, as previously discussed, contracting with a Texas resident cannot alone sustain a finding of minimum contacts. *See Moncrief Oil Int'l*, 481 F.3d at

312. While Hilltop executed the trades in Texas, Doc. 1, Compl., ¶ 6, "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Danziger & De Llano*, 24 F.4th at 502 (internal quotations omitted). Here, Hilltop has not alleged that Clear Haven performed any of its obligations under the Agreement in Texas or that the terms of the Agreement required Clear Haven to perform in Texas. *See* Doc. 1, Compl.; *Danziger & De Llano*, 24 F.4th at 502. Nor has Hilltop demonstrated that it was selected because of its ties to Texas or because Clear Haven believed Hilltop's connection to Texas would afford it some strategic advantage. *See* Doc. 1, Compl., ¶¶ 7, 10; *Danziger & De Llano*, 24 F.4th at 502; *see also McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). And, as discussed, the Agreement here is centered outside of Texas. Under these circumstances, Hilltop's unilateral activities in Texas do not justify the exercise of personal jurisdiction over Clear Haven. *See Danziger & De Llano*, 24 F.4th at 502.

  In sum, Hilltop has failed to make a *prima facie* showing that the Agreement has a substantial relationship to Texas. Clear Haven's only contacts with Texas rests on "the mere fortuity that [Hilltop] happens to be a resident of the forum." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). As such, the Court lacks personal jurisdiction over Clear Haven with respect to Hilltop's breach of contract claim. Similarly, because Hilltop's claims for money had and received, unjust enrichment, and attorney's fees all stem from same facts underlying the breach of contract claim (i.e., the sale of the Securities), *see* Doc. 1, Compl., ¶¶ 17–25, the Court concludes that it lacks personal jurisdiction over Clear Haven with respect to those claims as well. *Cf. Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (concluding that where there was no personal jurisdiction over breach of contract claim, there was

likewise no personal jurisdiction over claims for unjust enrichment and quantum meruit claims arising out of the same transaction).

B.      *The Case Should be Transferred Rather than Dismissed*

When a district court concludes it lacks personal jurisdiction, it may dismiss the action under Rule 12(b)(2), or it may transfer the case under 28 U.S.C. § 1406(a). *Herman*, 730 F.3d at 466. Under § 1406(a), when a case lays venue in a "wrong" judicial district, a court may, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "A division or district may be wrong under Section 1406(a) when the original court lacks personal jurisdiction." *Herman*, 730 F.3d at 466 (internal quotations omitted).

The Court concludes that, in the interest of justice, the case should be transferred to the Southern District of New York, rather than dismissed. This case should be transferred to the Southern District of New York for two reasons. First, because Clear Haven has its principal place in business in New York City, "both personal jurisdiction and venue" lie in the Southern District of New York. *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, 347 F. Supp. 3d 266, 273 (N.D. Miss. 2018); 28 U.S.C. § 1391(b)(1); Doc. 1, Compl., ¶¶ 2, 4; Doc. 12, Mot. Dismiss, 13. "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Haas Outdoors, Inc.*, 347 F. Supp. 3d at 273 (quotations omitted). Second, both Clear Haven and Hilltop are amenable to litigating the case in the Southern District of New York. Clear Haven has requested transfer to that district, and Hilltop is unopposed to transfer. Doc. 12, Mot. to Dismiss, 12–14; Doc. 18, Resp. Mot. Dismiss, 4. Accordingly, the Court **ORDERS** that this case be transferred to the United States District Court for the Southern District of New York.

IV.

CONCLUSION

For the foregoing reasons, the Court **DENIES** Clear Haven's Motion to Dismiss but **GRANTS** Clear Haven's Motion to Transfer Venue, albeit for different reasons (Doc. 12). The Court **ORDERS** that the case be transferred to the United States District Court for the Southern District of New York.

**SO ORDERED.**

**SIGNED: October 10, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE